United States Courts
Southern District of Texas
FILED

JUL 1 5 2015

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **15 CR 374** |
| **v.** | § | **Criminal No.** |
| | § | **UNDER SEAL** |
| **JOY C. ANEKE** | § | |
| **TEODORO SEMINARIO a/k/a** | § | |
| **TEODORO ANTONIO SEMINARIO-** | § | |
| **SANCHEZ a/k/a "DR. TED"** | § | |
| **MAUREEN HENSHALL a/k/a "MO"** | § | |

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order.

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNT ONE
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

### A. INTRODUCTION

At all times material to this Indictment:

### THE MEDICARE PROGRAM

1.      The Medicare Program ("Medicare") was a federally funded health

insurance program that provided health care benefits to certain individuals,

primarily the elderly, blind, and disabled. Medicare was administered by the

Centers for Medicare and Medicaid Services (CMS) an agency of the United States

Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were often referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3.      Medicare Part B helped pay for certain physician services, outpatient services, and other services, including diagnostic testing, etc. that were medically necessary and were ordered by licensed medical doctors or other qualified health care providers.

## THE DEFENDANTS

4.      JOY C. ANEKE, defendant herein, was a Licensed Vocational Nurse who operated two diagnostic clinics, Jadac Unique Health Services, Inc. ("Jadac") and Almeda Physicians Clinic, LLC ("Almeda"), and one home health agency, Community Joyful Home Health, Inc., d/b/a Bona Care ("Bona Care").

5.      TEODORO SEMINARIO a/k/a TEODORO ANTONIO SEMINARIO - SANCHEZ a/k/a "DR. TED", defendant herein, worked at the Jadac clinic as an unlicensed Physician's Assistant and resided in Houston, Texas.

6.      MAUREEN HENSHALL a/k/a MS. MO, defendant herein, was the manager of the Jadac clinic and worked at the Bona Care home health agency and resided in Highland, Texas.

## B. <u>THE CONSPIRACY</u>

7.      Beginning in or about July 2008, the exact time being unknown and continuing thereafter to in or about November 2010, in the Houston Division of the Southern District of Texas and elsewhere, defendants,

**JOY C. ANEKE,**
**TEODORO SEMINARIO a/k/a TEODORO**
**ANTONIO SEMINARIO SANCHEZ a/k/a DR.TED,**
**and**
**MAUREEN HENSHALL a/k/a MS. MO,**

did knowingly and willfully combine, conspire, confederate and agree with each other and other persons known and unknown to the grand jury to commit and aid and abet certain offenses against the United States:

To violate the Health Care Fraud statute, that is, to knowingly and willfully execute and attempt to execute, a scheme and artifice: (1) to defraud a health care benefit program; namely the Medicare program; and (2) to obtain, by means of material false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody and control of, a health care benefit program, namely Medicare, in connection with the delivery of and payment for health care benefits, items and services, violation of Title 18, United States Code Section 1347.

## C. OBJECT OF THE CONSPIRACY

8.      It was an object of the conspiracy that the defendants and others known and unknown to the Grand Jury would unlawfully enrich themselves by falsely and fraudulently representing to Medicare that certain services and procedures were performed for Medicare beneficiaries, when in fact the defendants well knew the services and procedures were not being performed or were not medically necessary.

## D. MANNER AND MEANS

It was a part of the conspiracy that:

9.      Defendant JOY C. ANEKE would and did cause another to file Articles of Incorporation for Jadac Unique Health Services, Inc. with the Texas Secretary of State on May 30, 2003.

10.      Defendant JOY C. ANEKE would and did file a Medicare Enrollment Application in the name of Jadac Unique Health Services, Inc. on June 6, 2006.

11.      Defendant JOY C. ANEKE would and did file a Reassignment of Medicare Benefits Application reassigning the benefits of Rosabar A. Fuentes, M.D. to Jadac Unique Health Services, Inc. on July 1, 2008.

12.      Defendant JOY C. ANEKE would and did open checking account number *9994, in the name of Jadac Unique Health Services, Inc., at Washington Mutual Bank on April 27, 2009 for the purpose of receiving Medicare payments for medical services and procedures allegedly performed at Jadac.

13.    Defendant JOY C. ANEKE would and did file an Electronic Funds Transfer (EFT) Authorization Agreement in the name of Jadac Unique Health Services on July 16, 2009 authorizing Medicare to deposit funds to Washington Mutual Bank account number *9994.

14.    Defendant JOY C. ANEKE would and did receive approximately $2 million from the Jadac account *9994 at Washington Mutual Bank.

15.    Defendant JOY C. ANEKE would and did open checking account number *7411, in the name of Bona Care, Inc., at Bank of America on November 12, 2008.

16.    Defendant JOY C. ANEKE would and did open checking account number *3754, in the name of Community Joyful Home Health, Inc. dba Bona Care, Inc. ("Bona Care II"), at JP Morgan Chase Bank on May 5, 2010.

17.    Defendant TEODORO SEMINARIO a/k/a  TEODORO  ANTONIO SEMINARIO-SANCHEZ a/k/a "DR. TED" would and did receive a total of $10,400.00 from the Jadac and Bona Care II bank accounts for his work at the Jadac clinic.

18.    Defendant MAUREEN HENSHALL a/k/a MS. MO would and did pay marketers/recruiters cash to bring Medicare beneficiaries to the Jadac clinic.

19.    Defendant MAUREEN HENSHALL a/k/a MS. MO would and did receive a total of approximately $27,439.00 from the Jadac, Bona Care and Bona

Care II bank accounts for her work at the Jadac clinic and Bona Care.

20.    Defendant MAUREEN HENSHALL a/k/a MS. MO would and did receive $21,044.00 of the $27,449.00 in checks made payable to her husband because she was receiving Social Security disability checks.

21.    Defendants, JOY C. ANEKE,    TEODORO    SEMINARIO    a/k/a TEODORO ANTONIO    SEMINARIO    SANCHEZ    a/k/a    DR.TED,    and MAUREEN HENSHALL a/k/a MS. MO, would and did cause Medicare to be billed for procedures, including allergy testing, complex cystometrograms, and anal/urinary muscle studies, which either were not performed or were not medically necessary.

22.    Defendants, JOY C. ANEKE,    TEODORO    SEMINARIO    a/k/a TEODORO ANTONIO SEMINARIO SANCHEZ a/k/a DR.TED, MAUREEN HENSHALL a/k/a MS. MO, would and did cause Medicare to be billed for procedures at the Jadac clinic totaling approximately $5.6 million which either were not performed or were not medically necessary.

23.    Defendants, JOY C. ANEKE,    TEODORO    SEMINARIO    a/k/a TEODORO ANTONIO    SEMINARIO    SANCHEZ    a/k/a    DR.TED,    and MAUREEN HENSHALL a/k/a MS. MO, would and did cause Medicare to directly deposit approximately $2.4 million to Jadac's Washington Mutual account for procedures at the Jadac clinic which were either not performed or were not

medically necessary.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH NINE
### (Health Care Fraud)
### 18 U.S.C. § 1347

### A. INTRODUCTION

At all times material to this Indictment:

1.    Paragraphs 1 through 6 of Section A of Count One are realleged and incorporated as though fully set forth herein.

2.    Beginning in or about May 2009 defendants JOY C. ANEKE,TEODORO SEMINARIO a/k/a TEODORO ANTONIO SEMINARIO SANCHEZ a/k/a DR.TED and MAUREEN HENSHALL a/k/a MS. MO, caused Medicare to be billed, and aided and abetted the billing of Medicare, for medical procedures which either were not performed or were not medically necessary. As a result of this unlawful scheme, Medicare paid out in excess of $2.4 million based on the false and fraudulent claims.

### B. PURPOSE OF THE SCHEME TO DEFRAUD

3.    It was a purpose of the scheme to defraud that the defendants and others known and unknown to the Grand Jury unlawfully enrich themselves by falsely and fraudulently representing to Medicare that certain services and

procedures were performed for Medicare beneficiaries when in fact the defendants

well knew the services and procedures either were not being performed or were not

medically necessary.

## C. **MANNER AND MEANS**

4.      Paragraphs 9 through 23 of Section D of Count One of this Indictment

are realleged and incorporated as though fully set forth herein.

## D. **HEALTH CARE FRAUD**

5.      Beginning in or about May 2009, and continuing thereafter to in or

about November 2010, in the Houston Division of the Southern District of Texas

and elsewhere, defendants,

**JOY C. ANEKE,**
**TEODORO SEMINARIO a/k/a TEODORO**
**ANTONIO SEMINARIO SANCHEZ a/k/a DR.TED**
**and**
**MAUREEN HENSHALL a/k/a MS. MO,**

aided and abetted by each other and others known and unknown to the grand jury,

did knowingly and willfully execute and attempt to execute a scheme and artifice to

defraud a health care benefit program, and to obtain by means of material, false and

fraudulent pretenses, representations, and promises, any of the money and property

owned by, and under the custody and control of, a health care benefit program in

connection with the delivery of and payment for health care benefits, items, and

services, to wit; on or about the below listed dates, the defendants listed caused to be

submitted false and fraudulent claims to Medicare:

| CT | DEFENDANT(S) | PATIENT INITIALS | PATIENT MEDICARE NO. | DATE OF CLAIM | CLAIM NUMBER | AMOUNT BILLED | FALSE CLAIM |
|---|---|---|---|---|---|---|---|
| 2 | Joy C. Aneke<br>Teodoro Seminario<br>Maureen Henshall | D.F. | 380A | 10/13/10 | 2910286134110 | $1,350 | Services not provided |
| 3 | Joy C. Aneke<br>Teodoro Seminario<br>Maureen Henshall | B.M. | 118A | 9/29/10 | 2810272674410 | $1,100 | Services not provided |
| 4 | Joy C. Aneke<br>Maureen Henshall | G.H. | 890A | 10/18/10 | 2910291760130 | $1,100 | Services not provided |
| 5 | Joy C. Aneke<br>Teodoro Seminario<br>Maureen Henshall | G.H. | 890A | 10/18/10 | 2910291759600 | $1,100 | Services not provided |
| 6 | Joy C. Aneke<br>Teodoro Seminario<br>Maureen Henshall | M.H. | 600A | 10/18/10 | 2910291759550 | $1,100 | Services not provided |
| 7 | Joy C. Aneke<br>Maureen Henshall | H.H. | 075A | 7/19/10 | 2810200722870 | $1,350 | Services not provided |
| 8 | Joy C. Aneke<br>Teodoro Seminario<br>Maureen Henshall | H.H. | 075A | 10/18/10 | 2910291761270 | $1,100 | Services not provided |
| 9 | Joy C. Aneke<br>Teodoro Seminario<br>Maureen Henshall | D.W. | 359B6 | 10/7/10 | 2810280774570 | $800 | Services not provided |

All in violation of Title 18, United States Code, Sections 1347 and 2.


## COUNTS TEN THROUGH THIRTEEN
### (Health Care Fraud)
### 18 U.S.C. § 1347


### A. INTRODUCTION

At all times material to this Indictment:

1.      Paragraphs 1 through 4 of Section A of Count One are realleged and incorporated as though fully set forth herein.

2.      Beginning in or about February 2011 defendant JOY C. ANEKE caused Medicare to be billed, and aided and abetted the billing of Medicare, for medical procedures which either were not performed or were not medically necessary. As a result of this unlawful scheme, Medicare paid out in excess of $166,000.00 based on the false and fraudulent claims.

## B. <u>PURPOSE OF THE SCHEME TO DEFRAUD</u>

3.      It was a purpose of the scheme to defraud that the defendant and others known and unknown to the Grand Jury unlawfully enrich themselves by falsely and fraudulently representing to Medicare that certain services and procedures were performed for Medicare beneficiaries when in fact the defendant well knew the services and procedures either were not being performed or were not medically necessary.

## C. <u>MANNER AND MEANS</u>

It was a part of the scheme to defraud that:

4.      Defendant JOY C. ANEKE would and did cause another person to file a Certificate of Formation Limited Liability Company for Almeda Rehab Clinic, LLC with the Texas Secretary of State on February 28, 2011.

5.      Defendant JOY C. ANEKE would and did cause another person to file a Certificate of Amendment for Almeda Rehab Clinic, LLC, changing the name to Almeda Physicians Clinic, LLC, with the Texas Secretary of State on March 3, 2011.

6.      Defendant JOY C. ANEKE would and did cause another person to file a Medicare Enrollment Application in the name of Almeda Physicians Clinic, LLC, Inc.

7.      Defendant JOY C. ANEKE would and did cause another person to open checking account number *3801, in the name of Almeda Physicians, at Wells Fargo Bank on March 23, 2011 for the purpose of receiving Medicare payments for medical services and procedures allegedly performed at Almeda Physicians.

8.      Defendant JOY C. ANEKE would and did receive approximately $198,417.00 in cash from the Almeda Physicians account at Wells Fargo Bank.

## D. HEALTH CARE FRAUD

9.      Beginning in or about February 2011, and continuing thereafter to in or about April 2012, in the Houston Division of the Southern District of Texas and elsewhere, defendant JOY C. ANEKE aided and abetted by others known and unknown to the grand jury, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain by means of material, false and fraudulent pretenses, representations, and promises,

any of the money and property owned by, and under the custody and control of, a

health care benefit program in connection with the delivery of and payment for

health care benefits, items, and services, to wit; on or about the below listed dates,

the defendant caused to be submitted false and fraudulent claims to Medicare:

| CT | PATIENT INITIALS | PATIENT MEDICARE NO. | DATE OF CLAIM | CLAIM NUMBER | AMOUNT BILLED | FALSE CLAIM |
|----|---------|---------|---------|---------|---------|---------|
| 10 | E.B. | 014A | 11/28/11 | 2811332905630 | $1,072 | Services not provided |
| 11 | G.E. | 396A | 10/21/11 | 2811294419120 | $944 | Services not provided |
| 12 | D.D. | 538A | 4/26/12 | 2912117033110 | $657 | Services not provided |
| 13 | M.M. | 034A | 4/26/12 | 2912117033230 | $220 | Services not provided |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS FOURTEEN THROUGH SIXTEEN
### (Health Care Fraud)
### 18 U.S.C. § 1347

## A. INTRODUCTION

At all times material to this Indictment:

## MEDICARE PROGRAM

1.     The Medicare program (Medicare) is a federally-funded health care

program designed to provide medical care to individuals over age 65 and individuals

with disabilities.   Medicare is administered by the Centers for Medicare and

Medicaid Services ("CMS"), a federal agency under the U.S. Department of Health and Human Services ("HHS"). Medicare is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

2.     Home Health services are provided by licensed medical professionals at a patient's residence and are paid for as "Medicare Part A" payments through Medicare's Hospital Insurance program. Examples of home health services include: intermittent skilled nursing services, physical therapy, and speech-language pathology. Skilled nursing services include the monitoring of blood sugar levels and the daily administration of insulin to insulin-dependent diabetic Medicare beneficiaries.

3.     Individuals who qualify for Medicare benefits are commonly referred to as "beneficiaries." Each beneficiary is given a Medicare identification number, referred to as a Health Insurance Claim Number (HICN).

4.     Home health care companies, pharmacies, physicians, and other health care providers that provide services to Medicare beneficiaries are referred to as "providers." To participate in Medicare, a provider is required to submit an application in which the provider agrees to comply with all Medicare-related laws and regulations. If Medicare approves a provider's application, Medicare assigns the provider a National Provider Identification (NPI) number. A health care provider with a Medicare NPI number can file claims with Medicare to obtain

reimbursement for medically necessary services rendered to beneficiaries.

5.      Once Medicare approves a provider's application, the provider is supplied with a current copy of the Medicare Part A Provider Manuals.   In addition, Medicare provides further guidance and updates in the form of bulletins and newsletters which are distributed to health care providers.   The Medicare Provider Manuals, bulletins, and newsletters contain the laws, rules, and regulations pertaining to Medicare-covered services including those rules and regulations regarding the requirements pertaining to providing and billing for home health care.

6.      CMS did not directly pay Medicare Part A claims submitted by Medicare certified Home Health Agencies ("HHA"). CMS contracted with different private companies to administer the Medicare program throughout different parts of the United States. In the State of Texas, CMS contracted with Palmetto Government Benefits Administration (Palmetto). As an administrator, Palmetto was to receive, adjudicate and pay claims submitted by HHA providers under the Part A program for home health claims. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data.

### Home Health Services

7.      The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits. A patient qualified for home health

benefits only if the patient:

    a.    Was confined to the home, also referred to as homebound.

    b.    Was under the care of a physician who specifically determined there was a need for home health care and established a Plan of Care; and

    c.    The determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or continued need for occupational therapy, the beneficiary was confined to the home, that a Plan of Care for furnishing services was established and periodically reviewed, and that the services were furnished while the beneficiary was under the care of the physician who established the Plan of Care.

    8.    To determine the proper level of care for a patient and ultimately the amount of payment a home health care agency will receive, Medicare requires that home health care agencies perform a comprehensive assessment of the patient that accurately reflects the patient's current health and provides information to measure his or her progress. In making this assessment, home health care agencies are required to complete a form called the Outcome and Assessment Information Set (OASIS).

    9.    With limited exceptions not applicable in this case, the OASIS assessment must be completed by a Registered Nurse who completes a detailed checklist after examining the prospective patient. Among other things, the OASIS

contains a projection of the minimum number and type of treatment the patient will need through home health care. The number of home health care visits is used to determine the compensation to the home health care agency.

10.     The OASIS information is then used to create a Plan of Care (CMS Form 485). The Plan of Care specifies the frequency of home health visits and describes the services to be provided to the patient. A physician must sign the CMS Form 485, certifying that home health care is necessary and that he/she has approved the Plan of Care.

11.     Since October 1, 2000, HHAs have been reimbursed under the "Prospective Payment System" (PPS). PPS is a split payment approach based upon 60 day time periods. For each episode of care, the home health care agency submits an initial Request for Anticipated Payment (RAP) and Medicare then pays 60% of the anticipated cost prior to the provision of services. The remaining 40% is paid after the provision of services and upon Medicare's receipt of the home health care agency's final claim.

12.     If the beneficiaries are still eligible for home health after their initial episode of care, they may be re-certified for another 60 day home health episode. For a subsequent (or re-certified) episode, the payment is split 50/50 between the RAP and the final claim. There is no limit of home health episodes that a beneficiary may receive.

13.    The provider's decision on whether care is reasonable and necessary is based on information provided on the OASIS forms and in the medical records concerning the unique medical condition of the individual beneficiary.

14.    In pre-paying the home health care provider, Medicare assumes that a certain minimum number of home health care visits will be necessary for each episode of care. If the numbers of home health care visits fall below the minimum number of expected visits for any 60 day period, then the calculations for reimbursements switch to payment on a per-visit basis for that 60 day period. This results in lower amount of reimbursement to the home health care agency and sometimes can even require that the home health care agency return the money to Medicare. Consequently, when a home health care agency submits a final claim they are required to represent whether the minimum number of home health visits were made during the 60 day episode.

15.    For every patient, Medicare also requires that the home health agency maintain a clinical record of the patient's past and current findings. In addition to the patient's Plan of Care, the record must include signed and dated clinical progress notes and copies of summary reports sent to the attending physician. While the form of progress notes may vary, all progress notes must contain the identity of the home health agency employee who performed the visit, the name of the patient, and the type of service performed.

## COMMUNITY JOYFUL HOME HEALTH, INC. d/b/a BONA CARE

16.     Community Joyful Home Health, Inc. d/b/a Bona Care ("Bona Care")
was a Texas corporation incorporated on or about August 15, 2008 and which did
business in Harris and Fort Bend Counties, purportedly providing home health care
services to eligible Medicare beneficiaries. Bona Care was located in Katy, Texas.

## THE DEFENDANT

17.     JOY C. ANEKE, defendant herein, operated Bona Care.

18.     Beginning in or about December 2008, defendant JOY C. ANEKE
caused Medicare to be billed, and aided and abetted the billing of Medicare, for
medical procedures which either were not performed or were not medically
necessary. As a result of this unlawful scheme, Medicare paid out in excess of
$249,000 based on the false and fraudulent claims.

## B. PURPOSE OF THE SCHEME TO DEFRAUD

19.     It was the purpose of the scheme and artifice for the defendant to
unlawfully enrich herself by, among other things, fraudulently inducing Medicare to
pay reimbursements for purportedly legitimate home health care claims, which
claims the defendant knew to be false, fictitious, fraudulent and otherwise
non-reimbursable in that, as the defendant well knew, the services billed were
provided to persons who the defendant knew were not qualified to receive Medicare
home health care benefits because she had fraudulently affixed the signature of a

medical doctor to the Forms 485 without the knowledge or consent of the doctor.

## C. **MANNER AND MEANS**

It was a part of the scheme to defraud that:

20.     Defendant JOY C. ANEKE would and did cause another person to file a Certificate of Formation For-Profit Corporation for Community Joyful Home Health, Inc. with the Texas Secretary of State on August 15, 2008.

21.     Defendant JOY C. ANEKE would and did cause Community Joyful Home Health, Inc. to purchase Bona Care Inc. for $120,000.00 on August 21, 2008.

22.     Defendant JOY C. ANEKE would and did cause another person to file a Medicare Enrollment Application in the name of Community Joyful Home Health, Inc. d/b/a/ Bona Care on October 2, 2008.

23.     Defendant JOY C. ANEKE would and did open checking account number *7411, in the name of Bona Care, Inc., at Bank of America on November 12, 2008 for the purpose of receiving Medicare payments for home health services allegedly provided by Bona Care.

24.     Defendant JOY C. ANEKE would and did open checking account number *3754, in the name of Community Joyful Home Health, Inc. dba Bona Care, Inc. (Bona Care II), at JP Morgan Chase Bank on May 5, 2010.

25.     Defendant JOY C. ANEKE would and did receive approximately

$921,000.00 from the Bona Care account *7411 at Bank of America.

26.     Defendant JOY C. ANEKE would and did cause the purported signature of Rosabar Fuentes, M.D. to be placed on numerous Forms 485 without the knowledge or consent of Dr. Fuentes.

## D. <u>HEALTH CARE FRAUD</u>

27.     Beginning in or about August 2008, and continuing thereafter to in or about June 2011, in the Houston Division of the Southern District of Texas and elsewhere, defendant

### JOY C. ANEKE,

aided and abetted by others known and unknown to the grand jury, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain by means of material, false and fraudulent pretenses, representations, and promises, any of the money and property owned by, and under the custody and control of, a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, to wit; on or about the below listed dates, the defendant caused to be submitted false and fraudulent claims to Medicare:

| CT | PATIENT INITIALS | PATIENT MEDICARE NO. | DATE OF CLAIM | CLAIM NUMBER | AMOUNT BILLED | FALSE CLAIM |
|---|---|---|---|---|---|---|
| 14 | J.J. | 441A | 1/5/2011 | 100501263904TXR | $1,200 | Services not Medically Necessary |
| 15 | S.C. | 727C1 | 12/30/10 | 036400763504TXR | $1,200 | Services not Medically Necessary |
| 16 | T.P. | 100A | 1/19/11 | 101901123804TXR | $1,350 | Services not Medically Necessary |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS SEVENTEEN AND EIGHTEEN
### (Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity - 18 U.S.C. § 1957)

1.     On or about the dates set forth below, in the Houston Division of the

Southern District of Texas and elsewhere, the defendant

## JOY C. ANEKE

aided and abetted by others, known and unknown, did knowingly engage and

attempt to engage in monetary transactions by, through, or to a financial institution,

affecting interstate or foreign commerce, in criminally derived property of a value

greater than $10,000, such property having been derived from a specified unlawful

activity, that is health care fraud in violation of Title 18, United States Code, Section

1347, as follows:

| COUNT | DATE | MONETARY TRANSACTION |
|-------|------|----------------------|
| 17 | 10/5/10 | Wire transfer from Bona Care, Inc. BOA account *7411, in the amount of $100,000.00, to the United Bank of Africa for the benefit of David N. Ngene |
| 18 | 10/12/10 | Withdrawal of cash from the Jadac Washington Mutual Bank account *9994, in the amount of $55,200.00 |

All in violation of Title 18, United States Code, Section 1957 and 2.

## COUNT NINETEEN
### (Aggravated Identity Theft – 18 U.S.C. §1028A)

On or about December 30, 2010, in the Houston Division of the Southern District of Texas and elsewhere, defendant JOY C. ANEKE, aided and abetted by others known and unknown to the grand jury, did knowingly transfer, possess, and use, without lawful authority, the personal identification information of R.F., M.D.; to wit her name and National Provider Identifier ("NPI") number, during and in relation to the violation of the healthcare fraud statute charged in Count Fourteen above.

All in violation of Title 18, United States Code, Section 1028A and 2.

## COUNT TWENTY
### (Aggravated Identity Theft – 18 U.S.C. § 1028A)

On or about January 5, 2011, in the Houston Division of the Southern District of Texas and elsewhere, defendant JOY C. ANEKE, aided and abetted by others

known and unknown to the grand jury, did knowingly transfer, possess, and use, without lawful authority, the personal identification information of R.F., M.D.; to wit her name and National Provider Identifier ("NPI") number, during and in relation to the violation of the healthcare fraud statute charged in Count Fifteen above.

All in violation of Title 18, United States Code, Section 1028A and 2.

## COUNT TWENTY-ONE
### (Aggravated Identity Theft – 18 U.S.C. § 1028A)

On or about January 19, 2011, in the Houston Division of the Southern District of Texas and elsewhere, defendant JOY C. ANEKE, aided and abetted by others known and unknown to the grand jury, did knowingly transfer, possess, and use, without lawful authority, the personal identification information of R.F., M.D.; to wit her name and National Provider Identifier ("NPI") number, during and in relation to the violation of the healthcare fraud statute charged in Count Sixteen above.

All in violation of Title 18, United States Code, Section 1028A and 2.

## NOTICE OF FORFEITURE
### 18 U.S.C. § 982(a)(7)

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States gives notice to defendants

**JOY C. ANEKE,**
**TEODORO SEMINARIO a/k/a TEODORO**
**ANTONIO SEMINARIO SANCHEZ a/k/a DR.TED,**
**and**
**MAUREEN HENSHALL a/k/a MS. MO,**

that upon conviction of conspiracy in violation of Title 18, United States Code, Section 1349 (as charged in Count One of this indictment), or of a violation of Title 18, United States Code, Section 1347 (as charged in Counts Two through Sixteen of this indictment), all property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offenses, is subject to forfeiture.

## NOTICE OF FORFEITURE
### 18 U.S.C. § 982(a)(1)

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to defendant

### JOY C. ANEKE

that upon conviction of a violation of Title 18, United States Code, Section 1957 (as charged in Counts Seventeen and Eighteen of this indictment), all property, real or personal, involved in such money laundering offenses or traceable to such property, is subject to forfeiture.

## MONEY JUDGMENT

Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the

defendants may be jointly and severally liable.

## SUBSTITUTE ASSETS

Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of defendants;

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendants up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), and as incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
Albert A. Balboni
Assistant United States Attorney